Attorney Martin Minnella for the appellant Mr. Farhadi. The outer boundaries of the United States Supreme Court's constitutional federalism concerned expressed in connection with 18 U.S. Code section 666 are made manifest in the prosecution of my client. A volunteer fire department chief who volunteered and devoted over 10,000 days as a necessary public servant as a volunteer fire department. Connecticut's enabling municipal law allows towns and cities to create fire departments. They can either create a fire department by having a town fire department where the firefighters are paid, hired by the town. They can have a volunteer fire department which they have some control. In this particular case, this was a volunteer fire department where the town of Middlebury had virtually no control. What I mean by that was it was a separate 501c3 entity uncontrolled by the town. In other words, the town, my client was the chief for approximately 18 years. Every two years there was in fact an election and the firefighters would meet and they would elect the chief. My client was elected I believe nine straight times. He could not be hired. He could not be fired. His hours couldn't be controlled by the town of Middlebury. They had absolutely no control. When you say, you said a moment ago, you started off actually saying that he was a necessary public servant. I think that was the phrase that you used. Yes. Who was he a public servant for? Well, there's a public purpose in the municipal statutes that allows the town to fund an entity like this. So the town of Middlebury did fund it. He was a public servant for the town of Middlebury. Not for the town of Middlebury. For the benefit of the town of Middlebury. He was an elected official by the firefighters. But he also got a W-2 and he was paid every single year for his years of stipend. And he got a car and he got a cell phone. Yes. They were, they, let me explain that part of it. What it was is that he and the town could do this under the municipal law, fund this. But he had no, he could not, he didn't have to answer to anyone. There was no control. And the element of control is very important in this case. The government, in their indictment, charged him as being an agent and or employee. However, when they submitted, when this was submitted to the jury by the government, the government decided to charge him as an employee of the town of Middlebury. And that was what I was going to say. Roberts. I thought that they also said he was an agent. I mean, didn't, didn't the, the instructions say that at one point that the statute that Mr. Parodi is charged with violating requires that the defendant be an agent of the town of Middlebury? In this case, the prosecution alleges that Mr. Parodi was an agent by virtue of his status as an employee of the town of Middlebury. An employee is a person who's authorized to act on behalf of another person, organization or government, who works for wages or a salary. Now, what was wrong with that charge? In the submissions by the government to the jury, they submitted that he was an employee and not an agent. And I can explain to you why they did this. In 2005, there was an agreement between the town of Middlebury and its town lawyer and Mr. Parodi and his counsel that Mr. Parodi could never be an agent of the town of Middlebury. It was an agreement entered into by all parties. And he could never bind the town as an agent. The government had to show that he was an employee and had to prove he was an employee beyond a reasonable doubt. Now, our issue was — You're saying he wasn't an agent of the town of Middlebury. He was not. Independently of being an employee. He was not an agent and he couldn't be an agent since 2005. And prior to our agreement — He was an employee, but — and that you didn't address the agency question. Prior to — Is there someplace where you actually took the position that he was — wasn't an agent as well as an employee? I mean, separately from his being an employee? He was — he was never — No. I'm asking about where in the record we find that, that you denied that he was an agent as opposed to an employee. Well, I believe the — I may be incorrect that the government in their — in one of their submissions had that document submitted. I am — Okay. Well, I'll ask the government. I'm sure they'll have an answer for that. And the other important issue — and he received the W-2 only in the past few years. He received a 1099, Your Honor, for that stipend for the majority of the time he was elected fire chief. But there's nothing to prevent with a 1099 from somebody going from an independent contractor and later on becoming an employee, right? Correct. And if the jury is making a determination as to whether he's an employee and they have a W-2 in front of them, isn't that — couldn't a reasonable inference be drawn from that that he's in fact an employee? Well, that's the reason why we asked the judge to submit to the jury the Darden test. We thought that was pertinent to this issue and would help the jury decide this issue  And it was very pivotal. A 1099 normally is given to an independent contractor, and he received that for many — but that's only one of the indicia in Darden. And we wanted — and Judge Myers said, I don't know if I'm correct, and I think you'll see that on the record. I don't know if I should have submitted, as you requested, the Darden test, because this is an issue of first impression. It's never been decided in a case involving this particular statute who is an employee or what is an employee. And — He also said that the government didn't get $5,000. Right. And the government — The government — Yeah. The government, Your Honor — Right. And the government, to get to the $5,000, they submitted numerous articles that they used in the Fatico hearing, over a hundred. And with a much less standard of proof, Judge Myers was only able to find out of hundreds of thousands of dollars, only $202 during the conclusion of the Fatico hearing. That is all he was able to find, with a much less standard of proof. And — Yes. Thank you. Good morning. May it please the Court. Sarah Carwin for the United States. Your Honors, picking up an open question that the appellant left off, the government is not aware of any evidence in the record that in 2005 an agreement was made where Mr. Perotti could never be an agent. So I'm afraid I don't have that citation for you. And the government had understood at trial the argument to be that Mr. Perotti was not an employee and therefore was not an agent. The government took the position and presented evidence, ample evidence, in the government's view to the jury that Mr. Perotti met the definition of agent. All right. To get — just to be absolutely clear, the so-called agreement that your adversary pointed to is not in the record? Your Honor, not that I am aware of. Well, you know the record. I mean, the record. I believe I do, Your Honor. I am — I cannot cite you to — and nothing is coming to mind, and certainly the government never took the position that there was such an agreement in 2005. The evidence was focused on 2011. Well, let me ask you this. Does it make any difference here in this case whether the judge gave the charge he gave or gave the — or should have given the Darden charge? Would it make any difference in this case? Your Honor, I think ultimately based on the overwhelming evidence that Mr. Perotti was an employee, I think it would be harmless that Judge Meyer didn't give that, because I think if he were to have given what he described as a multifaceted, a multipronged test to the jury, I think still examining all the evidence before the court, the jury likely would have come out the same, given the overwhelming evidence. And was the volunteer fire department — who paid for the equipment for the fire department? The evidence was that the town of Middlebury did, Your Honor. They owned the building, all the firefighting apparatus, and it was a line item in the town budget, which was government Exhibit 6, firefighting equipment. Along in that budget was also listed the salary for the fire chief, and the town of Middlebury approves that budget annually by referendum. Your Honor, I would leave that decision-making authority to my superiors, but I think that Judge Meyer, in addressing the sufficiency of the evidence, was comfortable with the fact that in any of the years of conviction, 2012 and 2013, no matter which path you took, the government had shown in excess of $5,000. Your Honor, I think in this case where there was evidence that Mr. Parati was not authorized to do that, and the statute not only prohibits — For purposes of restitution, Your Honor, the number might be zero. I think in terms of obtaining by fraud, it would be $10,000, Your Honor. The statute prohibits not only embezzlement, but misuse of funds in obtaining by fraud. There was also no evidence, Your Honor, that what was alleged to have been done by Mr. Parati had any certain value. Your Honor, I would cite you to the testimony of Max Biggins, as well as Andrew Ubaldi, who were employees of the electric company, who were working for the electric company but receiving town checks for that work. That combined with what the government called disguised billing exceeded $5,000 in each of the years of conviction. Your Honor, we didn't dispute a trial that work could have been done, but one of the issues was the town electrician testified, Kevin Dawes, who said that when someone is hired to do a project at one of the town buildings, they have to pull a permit, there's a procedure for inspection to make sure the work is done and was done correctly, and even assuming that Mr. Parati had done that work, none of those procedures were followed, so none of those inspections could be made and the town couldn't satisfy itself that the work was done, was done to code, and was done correctly. That whole process was circumvented when Mr. Parati decided a project had to be done, awarded himself the work, and then disguised the fact that he was the one ultimately being paid for that. So the town didn't get the benefit of it being done because it wasn't done according to code? I'm not sure I see that in the record. That issue was not presented to the jury, Your Honor, but the government's argument was that because Mr. Parati hid the fact that he was ultimately the recipient, that could never be determined whether that work had been done in years prior. And that was the theory that the government had presented to the jury, that it was not only funds obtained by fraud, but also, excuse me, that it was funds obtained by fraud and embezzlement, a misapplication of funds. The totals that I came up with, or that I think maybe you presented, were 14,000 for 2012, 14,127, and for 2013, 9,442, and that's the accumulation of all of these items, is that correct? Yes, Your Honor. Including the billing, the work that he did, but stated or presented as someone else's work. Yes, Your Honor. But if you took that out, you'd still be ahead of 5,000 each year. We would, Your Honor, yes. One of the points that you made earlier was that the error on the jury instruction would be harmless because the overwhelming evidence would have supported the factors in the Darden or some other test that was more elaborate for employee, but the standard that was set out in the jury instruction was really sort of wages and salaries, plus the common English language usage of the word employee. In order for there to be an analysis as to whether or not the evidence would have supported a broader test, would there have to have been some word instructing the jury to look at things like control or supervision of any kind? In other words, while you may not have to go through all of the Darden factors, do you need at least a control factor in there someplace to capture the rest of it? Well, Your Honor, there's nothing in the jurisprudence of Section 666 which would suggest that that was necessary, and that was one of the issues I think that the court struggled with in trying to adopt what the appellant had asked for in terms of a jury instruction. Obviously, the district court has to correctly frame the law to the jury, and what was presented was first the State of Connecticut Department of Labor test. That was withdrawn. Then the Darden test was offered, and then, and I cite the court to the record at Government Appendix 1117, the appellant just suggested that some of the factors in Darden should be presented to the jury. But again, there was never any legal citation that the appellant offered either below or here to suggest that Congress, in enacting 666, had any of these factors in mind, but instead had the broadest possible definition of agency in mind. I see that my time is up. Thank you very much. Thank you. Okay. Rebuttal. To answer your question, Your Honor, the town of Middlebury did not suffer one dime. Mr. Perotti's work, and the government has 302s, the chief executive officer in Middlebury is the first selectman. He told the FBI in their 302s that he saw Perotti doing the work, not only saw him, knew he was subbing in the work for Astro, and he completed the work satisfactorily. The other work that they claimed on the gutters, that also the first selectman told the FBI, and it's in the government's 302s, that saw Mr. Perotti do the work, knew Mr. Perotti did the work, and was satisfied Mr. Perotti did the work. This whole issue came up because there was a generator project, Your Honor, that was bid on by Mr. Perotti with the permission of the town. He got the lowest bid. He did the job and lost money. That was Paul Perotti, Your Honor. Thank you.